Maurice A. Spalding v. Commissioner.
Spalding v. Commissioner
Docket No. 36619.
United States Tax Court
1953 Tax Ct. Memo LEXIS 164; 12 T.C.M. (CCH) 883; T.C.M. (RIA) 53261; July 31, 1953
*164 Tracy E. Griffin, Esq., 1107 American Building, Seattle, Wash., for the petitioner. John D. Picco, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined the following deficiencies in income tax and additions to tax: § 293(b) § 294(d)(2)
Addition
Addition
Year
Deficiency
to Tax
to Tax
1943
$10,486.01
$ 5,243.01
1944
5,219.63
2,609.82
1945
1,815.48
907.74
$ 162.13
1946
25,689.82
12,844.91
1,556.60
Total
$43,210.94
$21,605.48
$1,718.73
The questions presented are whether the respondent correctly determined the taxable net income of the petitioner for the years in question and, if so, whether the omissions and understatements of taxable income by the petitioner were fraudulent and made with intent to evade tax. Findings of Fact The stipulated facts are so found and the stipulation incorporated herein by reference. During the years in question the petitioner was a practicing physician residing in Seattle, Washington. His returns were prepared on the cash basis and were filed with the collector of internal revenue at Tacoma, Washington. *165 The petitioner was born in Vincennes, Indiana, in 1891 and came to Seattle, Washington, in 1907. He worked for the Seattle Gas Company from 1908 to 1910, inclusive. In 1911 he went to Hawaii and during the years 1911 and 1912 was employed by the United States Immigration Service in Honolulu. He continued this employment in 1913 when he was also employed as court stenographer on the Board of Special Inquiry at Honolulu. He left the Island in 1913 and returned to Seattle where he entered the University of Washington for a premedical course. He entered the University of Chicago Medical School in 1916. He married Dora Roos in Chicago, Illinois, on March 20, 1920, the day after his graduation. He completed his internship about May of 1921 and began the practice of medicine in the city of Chicago in 1922. The petitioner and his wife lived together for eleven years. They separated in 1933 and in the same year proceedings for divorce were instituted in the Superior Court of Cook County, Chicago, Illinois. A divorce was granted to Dora Spalding on January 29, 1935. The petitioner appealed from that part of the decree dividing certain property between the parties, and the property issues were *166 finally settled by the Illinois Supreme Court on October 14, 1935. . The petitioner remarried on July 2, 1935, and later in the year took a trip around the world with his second wife, Adelaide C. Spalding. Upon returning to the United States in 1937 he did certain interning and post graduate work in New York, Baltimore, and Chicago. During this period, from 1937 to 1939, Mrs. Spalding and their child, born in 1938, lived with her parents in Chicago. In 1940 the petitioner and his family moved to Seattle, Washington, and in 1941 he set up offices and established a medical practice at 85th and Greenwood Streets. In 1946, Adelaide C. Spalding, now Adelaide C. Jordan of Oak Park, Illinois, instituted a suit for divorce against the petitioner. Divorce was granted to her by final decree entered on November 22, 1946. On or about February 8, 1951, the petitioner vacated his office and left the state permanently to establish residence in California. The petitioner filed non-taxable income tax returns for the years 1921 to 1925, inclusive, and for the years 1931 to 1940, inclusive. The petitioner paid an income tax of $15.45 *167 on his 1926 return; $21.71 on his 1927 return; $42.99 on his 1928 return; $32 on his 1929 return, and $30.59 on his 1930 return. He reported a net income of $1,939.42 and $3,720.86 on his returns for 1941 and 1942, respectively. The petitioner rented safe deposit box No. 3783 at the Greenwood Branch of the Seattle First National Bank on May 31, 1943. The petitioner also rented safe deposit box No. 4-132 at the Main Branch of the Settle First National Bank in the name of "Wilford Blatherwick." The respondent determined the claimed amount of net income derived by the petitioner from his medical practice for the years 1943 to 1946, inclusive, by reference to the increase in the petitioner's net worth during said years plus the petitioner's personal living expenses, income tax payments, and other known disbursements. The computation of net worth made by the respondent is as follows: Respondent's Determination of Increase in Net Worth Assets
12/31/42
12/31/43
12/31/44
12/31/45
12/31/46
Seattle First National Bank (Greenwood
Branch) - checking account
$ 924.90
$ 2,201.09
$ 4,071.29
$ 1,134.18
$ 4,528.87
Stocks
2,010.53
3,926.38
3,926.38
3,926.38
U.S. Government Bonds, Series E
562.50
937.50
3,075.00
6,450.00
3,881.25
Postal savings, account #1144, Greenwood
Branch
2,500.00
U.S. Government Bonds
40,000.00
Northwestern Mutual Life - Annuities (Re-
maining cost)
6,381.00
6,272.44
Metropolitan Life Insurance Company -
Annuities (Remaining cost)
43,943.24
Equipment
2,364.96
2,411.63
1,883.42
Northwestern Mutual Life Ins. Company
Policy 3203290
2,175.42
2,175.42
2,175.42
2,175.42
2,175.42
Metropolitan Life Insurance Company
5,000.16
5,000.16
5,000.16
5,000.16
Sun Life Assurance Co. - (premium de-
posit) *
1,099.00
Cash in safe deposit box
Canadian Bank of Commerce
55.91
55.91
55.91
55.91
Total assets
$5,673.35
$15,395.46
$20,669.12
$67,534.68
$70,240.71
Less Liabilities: Seattle First National Bank
40,000.00
Net Worth
$5,673.35
$15,395.46
$20,669.12
$27,534.68
$70,240.71
Increase in net worth during year
$ 9,722.11
$ 5,273.66
$ 6,865.56
$42,706.03
Plus: Income taxes paid
1,846.44
1,339.22
3,191.01
2,886.72
Living expenses: Insurance premiums not included in net
worth
7,958.19
10,538.69
957.84
957.84
Loss on option
1,000.00
Divorce settlement
6,000.00
Check on Canadian Bank of Commerce
4,546.88
Other expenses, estimated
5,000.00
5,000.00
5,000.00
5,000.00
Total known income
$29,073.62
$22,151.57
$16,014.41
$58,550.59
*168 The petitioner had approximately $75,000 in cash when he came to Seattle in 1940. Opinion At the hearing counsel for the respondent conceded that the main question here was one of "beginning cash" and that if the petitioner established that he had an alleged cash hoard of $75,000 in 1940 it "would eliminate the entire deficiency." We think the existence of the hoard has been established. The petitioner testified at the hearing and was subjected to searching cross examination. On brief the petitioner's counsel characterized the life history of his client as "bizarre" and concluded that it was "bizarre enough to be in itself factual." We agree with the characterization, but disagree with the conclusion. The story told by the petitioner on the stand concerning how he accumulated his cash, carried it from place to place, and at one time stored it in the oven of a gas range in a garage in Indianapolis for a period of four years while he took a trip to Europe and otherwise traveled is beyond belief. We place no faith in the petitioner's testimony, filled as it is with glaring inconsistencies when compared with the proceedings in the divorce *169 action referred to in our findings. Were his the only testimony in the record we would discredit it forthwith. However, the life history of the petitioner and how he accumulated and secreted his hoard are beside the basic question of fact, which is whether the petitioner actually had approximately $75,000 in cash when he came to Seattle in 1940. On this question the petitioner's story is corroborated by the testimony of his brother. The Court carefully observed the brother on the stand. He is a businessman of long standing who appeared at the trial as a "surprise" witness. We think, nonetheless, that his testimony is worthy of belief. It was to the effect that the petitioner, shortly after coming to Seattle in 1940 requested help in obtaining a safety deposit box, that the box was obtained, and that the witness saw the cash hoard, counted out at least $61,000 himself, saw enough other money in counted packages to make up the remainder of the approximately $75,000 and accompanied the petitioner to the bank where the cash was placed in the box. We have no reason for believing this witness perjured himself. Furthermore, the respondent made the following adjustments to the income of *170 the petitioner in determining the deficiencies here involved: Income
Net Income
Year
Understated
Corrected
1943
$20,691.18
$ 29,073.62
1944
10,760.20
21,651.57
1945
4,239.49
15,514.41
1946
42,623.99
56,905.47
$78,314.86
$123,145.07
We observed the petitioner on the stand, listened to his story about his practice and his experiences in life, and considering the short duration of the petitioner's residence in Seattle as a practicing physician, on the basis of the record before us, we are unwilling to believe that his practice in Seattle ever reached the proportions necessary to have produced income of such figures, particularly in the years 1943, 1944, and 1946. To some extent this supports the existence of a cash hoard in 1940, prior to the petitioner's coming to Seattle. We have no sympathy whatever with the petitioner's lack of cooperation with the Bureau of Internal Revenue in establishing the facts of this case prior to trial, particularly his failure to bring into the open the fact that his brother had counted his cash in the period shortly after he came to Seattle and could be relied upon so to testify. Had this phase of the controversy *171 been disclosed to the tax collecting agents and a forthright stand been taken it is not at all certain that an adjustment of this matter could not have been arrived at without the necessity of taking the Court's time at the expense of other litigants who have tax problems more worthy of judicial consideration. Since we have found that the petitioner had a cash fund of approximately $75,000 in 1940, and it is conceded that if that is the fact, there is no deficiency, we must conclude that the respondent is in error. Decision will be entered for the petitioner. Footnotes
*. Deposit refunded February 2, 1944.↩